UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 17-64177-PMB |
| | ) | |
| MICHAEL F. ANTONELLI and | ) | CHAPTER 7 |
| NOREEN A. ANTONELLI, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| NEIL C. GORDON, | ) | |
| Chapter 7 Trustee for the Estates of | ) | |
| Michael F. Antonelli and | ) | |
| Noreen A. Antonelli, | ) | ADVERSARY PROCEEDING |
| | ) | NO._____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PNC BANK, N.A., successor by merger to | ) | |
| RBC CENTURA BANK, | ) | |
| SUNSHINE MORTGAGE CORPORATION, | ) | |
| n/k/a SUNSHINE MORTGAGE, LLC, | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Neil C. Gordon, as Chapter 7 Trustee (the "**Plaintiff**") for the bankruptcy

estates of Michael F. Antonelli and Noreen A. Antonelli (collectively, the

"**Bankruptcy Estate**"), files this *Complaint* against PNC Bank, N.A, successor by

merger to RBC Centura Bank ("**PNC Bank**"), Sunshine Mortgage Corporation, n/k/a

Sunshine Mortgage, LLC ("**SMC**") and Wells Fargo Bank, N.A. ("**Wells Fargo**," and

together with SMC and PNC Bank, the "**Defendants**") and respectfully shows the Court the following:

<h3 align="center">Jurisdiction and Venue</h3>

1.      This is an adversary proceeding brought under Rule 7001 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 544, 547, 550, and 551.

2.      This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2).

3.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334.

4.      Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409(a) because this adversary proceeding arises in and relates to the bankruptcy case styled as *In re Michael F. Antonelli* and *Noreen A. Antonelli*, Chapter 7 Case No. 17-64177-PMB (the "**Bankruptcy Case**") pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

5.      Defendants are headquartered in the United States and are subject to the jurisdiction of this Court.

6.      Plaintiff consents to the entry of final orders or judgment by the Bankruptcy Court.

<h3 align="center">Statement of Facts</h3>

<h4 align="center">a. General Background</h4>

7.      On August 11, 2017 (the "**Petition Date**"), Michael F. Antonelli and

Noreen A. Antonelli (together, the **"Debtors"**) filed a voluntary petition constituting an order for relief pursuant to 11 U.S.C. § 301, thereby initiating the Bankruptcy Case as a Chapter 7 proceeding.

8. On or about August 14, 2017, Plaintiff was appointed to the Bankruptcy Case as the interim Chapter 7 trustee pursuant to 11 U.S.C. § 701(a)(1).

9. The Chapter 7 meeting of creditors was held and concluded on September 19, 2017, pursuant to 11 U.S.C. § 341(a), at which time, Plaintiff became the permanent Chapter 7 Trustee pursuant to 11 U.S.C. § 702(d).

### b. The Property

10. As of the Petition Date, the Debtors jointly owned that certain improved real property known commonly as 3020 Lancaster Square, Rowell, Fulton County, Georgia 30076 (the **"Property"**).

11. Trustee obtained a full title examination report for the Property, dated June 14, 2018 and effective March 30, 2018.

12. Casimir S. Rejent, as attorney in fact, executed a *Security Deed* in favor of RBC Centura Bank (**"RBC Bank"**) dated June 30, 2006, pledging Debtors' respective interests in the Property to secure a credit line in the original principal amount of $199,000.00 (the "**RBC Deed**").

13. The RBC Deed was recorded on the real property records with the Clerk of the Superior Court of Fulton County (the "**Real Estate Records**") on August 22, 2006 at Deed Book 43293, page 129.

14.     The RBC Deed's definition of "Security Deed" does not include any riders or affidavits executed in conjunction with the RBC Deed.  There is no reference in the RBC Deed to another security deed or subordination agreement.

15.     The RBC Deed does not include an Exhibit "A," even though it references an Exhibit "A."

16.     A true and correct copy of the RBC Deed is attached hereto, marked as Exhibit "A," and incorporated by reference.

17.     A *Waiver of Grantor's Rights* is recorded in the Real Estate Records just after the RBC Deed at Deed Book 43293, page 138 (the "**RBC Waiver of Grantor's Rights**").

18.     The RBC Waiver of Grantor's Rights is attested by an official witness, but it was not attested by an unofficial witness.

19.     The RBC Waiver of Grantor's Rights does not include an Exhibit "A," even though it references an Exhibit "A."

20.     A true and correct copy of the RBC Waiver of Grantor's Rights is attached hereto, marked as Exhibit "B," and incorporated by reference.

21.     In the legal description attached as Exhibit "A" to the *Closing Attorney's Affidavit* that follows the recording of the RBC Deed and RBC Waiver of Grantor's Rights in the Real Estate Records [Deed Book 43515, page 140] (the "**RBC Closing Attorney's Affidavit**"), the following language appears: "THIS LOAN IS SUBJECT AND SUBORDINATE TO SECURITY DEED DATED JUNE 30, 2006 TO MER [sic] AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION IN THE PRINCIPAL

AMOUNT OF $1,492,500.00" (the "**Exhibit "A" Language**").

22.    At best, the Exhibit "A" Language is ambiguous.

23.    Neither RBC nor Sunshine Mortgage Corporation signed Exhibit "A" of the RBC Closing Attorney's Affidavit.  The Exhibit "A" Language is too vague and indefinite to form a subordination agreement between RBC and Sunshine Mortgage Corporation.  The Exhibit "A" Language did not result in a subordination agreement between RBC and Sunshine Mortgage Corporation.  Upon information and belief, there is no subordination agreement between RBC and Sunshine Mortgage Corporation.

24.    The RBC Closing Attorney's Affidavit does not include a caption that satisfies O.C.G.A. § 44-2-20(c).

25.    A true and correct copy of the RBC Closing Attorney's Affidavit is attached hereto, marked as Exhibit "C," and incorporated by reference.

26.    Upon information and belief, RBC Bank merged with PNC Bank in 2012.

27.    Casimir S. Rejent, as attorney in fact, executed a second *Security Deed* in favor of "MERS" as nominee for Sunshine Mortgage Corporation ("**SMC**")[1] dated June 30, 2006 (the "**First Transfer**"), pledging Debtors' respective interests in the Property to secure a loan in the original principal amount of $1,492,500.00 (the "**SMC Deed**").

28.    The SMC Deed was recorded on the Real Estate Records on September 22, 2006, at Deed Book 43515, page 88 (the "**Second Transfer,**" and together with the First Transfer, the "**Transfers**").

---

[1] By virtue of the *Certificate of Conversion* filed with the Georgia Sectary of State, Sunshine Mortgage Corporation converted to Sunshine Mortgage, LLC on March 8, 2010.

29.     A true and correct copy of the SMC Deed is attached hereto, marked as Exhibit "D," and incorporated by reference.

30.     The SMC Deed lacks an official witness.

31.     The SMC Deed includes various riders and documents, including a waiver of borrower's rights and a closing attorney's affidavit.

32.     In the Closing Attorney's Affidavit that is a rider to the SMC Deed (the "**SMC Closing Attorney's Affidavit**"), the closing attorney states that prior to the execution of the SMC Deed and *Waiver of Borrower's Rights* (the "**SMC Waiver of Borrower's Rights**") by the Debtors, the closing attorney reviewed and explained the terms and provisions of the SMC Deed to the Debtors.

33.     However, the Debtors were not present at the closing for which the SMC Deed was signed.  And, upon information and belief, the closing attorney never met with or spoke to Debtors about the SMC Deed or the SMC Waiver of Borrower's Rights.

34.     Instead, Casimir S. Regent, as attorney in fact, was present and signed the SMC Deed on behalf of Debtors.

35.     The averments of the closing attorney in the SMC Closing Attorney's Affidavit are factually impossible.

36.     At best the language of the SMC Closing Attorney's Affidavit is ambiguous.

37.     The SMC Closing Attorney's Affidavit does not include an averment

that the closing attorney saw the Debtors sign the SMC Deed. Instead, the SMC Closing Attorney's Affidavit only states that the Debtors signed the SMC Deed.

38.    The SMC Closing Attorney's Affidavit does not state that the SMC Deed was attested according to law.

39.    The alleged notary seal included on the SMC Waiver of Borrower's Rights does not include all elements required under O.C.G.A. § 45-17-6.

40.    The alleged notary seal included on the SMC Closing Attorney's Affidavit does not include all elements required under O.C.G.A. § 45-17-6.

41.    In his role as a hypothetical *bona fide* purchaser, Plaintiff does not have notice of the SMC Deed.

42.    By virtue of a *Corporate Assignment of Security Deed* dated May 24, 2017 (the "**Assignment**"), SMC assigned the SMC Deed and related note to Wells Fargo.

43.    The Assignment was recorded on the Real Estate Records on May 31, 2017 at Deed Book 57565, page 92.

44.    A true and correct copy of the Assignment is attached hereto, marked as Exhibit "E," and incorporated by reference.

45.    Wells Fargo is the holder of the SMC Deed.

## COUNT I

### Request to Establish Validity, Extent and Priority of Defendants' Interests

46.    The Plaintiff hereby re-alleges and incorporates paragraphs 1 through 45 of this Complaint as if the same were set forth verbatim herein.

12483710v2

Case 18-05183-pmb   Doc 1   Filed 08/02/18   Entered 08/02/18 17:54:47   Desc Main
Document     Page 8 of 55

47.     The validity, extent and priority of the Defendants' liens and interests in the Property have not been conclusively established and it is necessary to do so to determine the extent of each of the Defendants' interests, if any, in the Property.

48.     Plaintiff has obtained a professional title examination for the Property. The title examination shows that the RBC Deed is in a first position and superior to the SMC Deed.

49.     The RBC Deed was recorded on August 22, 2006, thirty-one (31) days before the SMC Deed was recorded and was not subject to subordination to the SMC Deed, because (i) no subordination agreement was recorded in connection (or even existed) with the recordation of the SMC Deed, (ii) the SMC Deed makes no reference to a subordination agreement, (iii) the SMC Deed makes no reference to the RBC Deed, and (iv) the RBC Deed makes no reference to the SMC Deed or any subordination agreement.

50.     Wells Fargo's discovery of a reference to a subordination in the legal description attached to the RBC Closing Attorney's Affidavit is legally insufficient to give notice and is outside the Property's chain of title.

51.     Plaintiff prays for a determination from the Court establishing the extent and validity of the interests, if any, of the Defendants' in the Property.

## COUNT II

### Avoidance of the Transfers
### Under 11 U.S.C. § 544 (a)(3)

52.     The Plaintiff hereby re-alleges and incorporates paragraphs 1 through 51

12483710v2

of this Complaint as if the same were set forth verbatim herein.

53.    The SMC Deed is patently defective because the execution of the SMC Deed was not attested by or acknowledged before an official witness.

54.    Because of this patent defect, the SMC Deed was improperly admitted of record, and the SMC Deed does not provide notice of any security interest to Plaintiff.  *See Wells Fargo Bank, N.A. v. Gordon,* 292 Ga. 474 (2013); *In re Codrington,* 716 F.3d 1344 (11th Cir. 2013); *Gordon v. U.S. Bank Nat'l Ass'n (In re Hagler),* 429 B.R. 42 (Bankr. N.D. Ga. 2009) (Massey, J.); *U.S. Bank Nat'l Ass'n v. Gordon,* 289 Ga. 12, 17 (2011).

55.    The Plaintiff, in his position as a hypothetical *bona fide* purchaser of real property, has a superior claim than that of Wells Fargo in the Property, and the Plaintiff may avoid the Transfers under 11 U.S.C. § 544(a)(3).

## COUNT III

### Recovery of the Transfers from Wells Fargo and SMC
### Under 11 U.S.C. § 550(a)

56.    The Plaintiff hereby re-alleges and incorporates paragraphs 1 through 55 of this Complaint as if the same were set forth verbatim herein.

57.    SMC is the initial transferee of an interest in the Property from Debtors.

58.    Wells Fargo is a mediate or immediate transferee of an interest in the Property from Debtors.

59.    Pursuant to 11 U.S.C. § 550, the Plaintiff is entitled to recover the Transfers or the value of the Transfers from Wells Fargo and SMC as best evidenced

by the amount of the debt secured by the SMC Deed.

## COUNT IV

### Preservation of Avoided Transfers
### Under 11 U.S.C. § 551

60.    The Plaintiff hereby re-alleges and incorporates paragraphs 1 through 59 of this Complaint as if the same were set forth verbatim herein.

61.    The avoided Transfers are preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

## COUNT V

### Avoidance of the Third Transfer
### Under 11 U.S.C. § 547, Alternative Count

62.    The Plaintiff hereby re-alleges and incorporates paragraphs 1 through 61 of this Complaint as if the same were set forth verbatim herein.

63.    The recordation of the Assignment on May 31, 2017, may have resulted in a transfer of an interest in property of the Debtors (the "**Third Transfer**").

64.    The Third Transfer was made to or for the benefit of Wells Fargo.

65.    The Third Transfer was made on account of an antecedent debt owed by Debtors to SMC (the "**Debt**"), which was assigned to Wells Fargo.

66.    Debtors owed the Debt before the Third Transfer was made.

67.    The Third Transfer was made within ninety (90) days of the Petition Date.

68.    On the date that the Third Transfer occurred, the sum of Debtors' debts

12483710v2

was greater than all of Debtors' assets.

69.     Debtors were insolvent on the date that the Third Transfer occurred.

70.     Debtors' bankruptcy schedules filed in their Bankruptcy Case show that the amount of Debtors' debts far exceeded the value of their assets on the Petition Date, which was just 72 days before the Third Transfer.

71.     The Third Transfer enabled Wells Fargo to receive more than Wells Fargo would have received if (i) the Bankruptcy Case was a case under chapter 7 of the Bankruptcy Code, (ii) the Third Transfer had not been made, and (iii) Wells Fargo received payment of the Debt to the extent provided by the provisions of the Bankruptcy Code.

72.     Therefore, Plaintiff is entitled to avoid the Third Transfer under 11 U.S.C. § 547(b).

## COUNT VI

### Recovery of the Third Transfer from Defendant Wells Fargo
### Under 11 U.S.C. § 550(a), Alternative Count

73.     The Plaintiff hereby re-alleges and incorporates paragraphs 1 through 72 of this Complaint as if the same were set forth verbatim herein.

74.     Wells Fargo was the initial transferee of the Third Transfer and/or the entity for whose benefit the Third Transfer was made, or the immediate or mediate transferee of the initial transferee of the Third Transfer.

75.     Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the avoided Third Transfer or the value thereof from Wells Fargo.

12483710v2

## COUNT VII

### Preservation of Avoided Third Transfer
### Under 11 U.S.C. § 551, Alternative Count

76.     The Plaintiff hereby re-alleges and incorporates paragraphs 1 through 75 of this Complaint as if the same were set forth verbatim herein.

77.     The avoided Third Transfer is preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

WHEREFORE, Plaintiff prays that this Court enter a judgment in the favor of Plaintiff and against Defendants as follows:

a)      Determining and establishing the extent and priority of all liens, claims, and encumbrances in or against the Property;

b)      Avoiding the Transfers under 11 U.S.C. § 544(a)(3);

c)      Requiring Wells Fargo to turnover, deliver, and transfer its interest in the Property, or the value of the same, to Plaintiff under 11 U.S.C. § 550;

d)      Preserving the Transfers for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551;

e)      Alternatively, avoiding the Third Transfer under 11 U.S.C. § 547(b);

f)      Alternatively, finding Wells Fargo liable for the Third Transfer under 11 U.S.C. § 550, and entering a money judgment against Wells Fargo and in favor of Plaintiff in an amount no less than the value of the Third Transfer;

g)      Alternatively, ordering immediate release of the SMC Deed by Wells

12483710v2

Fargo;

h)     Alternatively, preserving the avoided Third Transfer for the benefit of the

Bankruptcy Estate, pursuant to 11 U.S.C. § 551; and

i)     Granting any other relief the Court deems just and proper.

Respectfully submitted this 2nd day of August, 2018.

ARNALL GOLDEN GREGORY, LLP
*Attorneys for Trustee*

By: /s/  Neil C. Gordon
          Neil C. Gordon
          Ga. Bar No. 302387
          neil.gordon@agg.com

          Michael J. Bargar
          Ga. Bar No. 645709
171 17th Street, NW, Suite 2100    michael.bargar@agg.com
Atlanta, Georgia 30363-1031
Phone: (404) 873-8500

# EXHIBIT "A" FOLLOWS

```
r.       o:
    .ES W. CROCKER, P.C.
 .  .0 Powers Ferry Road, N.W.
    .e 350
    .ta, Georgia 30339
```

Deed Book 43293 Pg   129
Filed and Recorded Aug-22-2006 08:30am
2006--0283927
Georgia Intangible Tax Paid $597.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

WHEN RECORDED MAIL TO:
RBC Centura
ATTN: Kent Williams
P.O. Box 500
Rocky Mount, NC 27802

---

## SECURITY DEED

**MAXIMUM LIEN.** The lien of this Security Deed shall not exceed at any one time $199,000.00.

THIS SECURITY DEED dated June 30, 2006, is made and executed between Michael F Antonelli and Noreen A Antonelli, Husband & Wife, whose address is 3020 Lancaster Square, Roswell, GA 30076 (referred to below as "Grantor") and RBC CENTURA BANK, whose address is Lending Service Center, P.O. Box 1220, Rocky Mount, NC 27802 (referred to below as "Lender").

GRANT OF SECURITY DEED. FOR AND IN CONSIDERATION of the financial accommodations to Grantor by Lender resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells to Lender all of Grantor's right, title, and interest in and to the following described real property: **The Real Property** is located in **Cobb County, State of Georgia and is described as follows:**

**See Attached Exhibit A for Legal Description**

TOGETHER WITH ANY AND ALL of the following: (i) all buildings, structures and improvements now or hereafter located on the real property or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto; (ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof; (iii) all Rents accruing therefrom, whether now or hereafter due; (iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon; (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located thereon or thereunder or on or under any part or parcel thereof; (vi) all estates, rights, title and interest therein, or in any part or parcel thereof; (vii) all equipment, machinery, apparatus, fittings, fixtures, furniture, furnishings, mobile homes, modular homes and all personal property of every kind or description whatsoever now or hereafter located thereon, or in or on the buildings, structures and improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and (viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.

The Real Property or its address is commonly known as 3020 Lancaster Square, Roswell, GA 30076.

REVOLVING LINE OF CREDIT. This Security Deed secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor up to the maximum principal indebtedness of $199,000.00 so long as Grantor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Security Deed secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance. The maturity date of the Credit Agreement is July 10, 2026.

THIS SECURITY DEED, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS SECURITY DEED. IT IS THE INTENTION OF GRANTOR AND LENDER TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY DESCRIBED IN THIS SECURITY DEED PURSUANT TO O.C.G.A. 44-14-80 AND TO AGREE THAT TITLE SHALL NOT REVERT TO GRANTOR FOR A PERIOD OF SEVEN (7) YEARS FROM THE MATURITY DATE OF THE DEBT OR DEBTS SECURED BY THIS SECURITY DEED. HOWEVER, NOTHING IN THIS PARAGRAPH WILL IMPAIR LENDER'S RIGHTS TO COLLECTION OF THE INDEBTEDNESS AND FORECLOSURE OF THE SECURITY INTEREST IF THE INDEBTEDNESS IS NOT REPAID WHEN DUE. THIS SECURITY DEED IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Security Deed, Grantor shall pay to Lender all amounts secured by

Deed Book 43293 Pg  130

## SECURITY DEED
### (Continued)

Loan No: 8102332643                                                                                    Page 2

this Security Deed as they become due and shall strictly perform all of Grantor's obligations under this Security Deed and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Security Deed. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Security Deed or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Security Deed, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Security Deed and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Security Deed.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Security Deed upon the sale or transfer, without Lender's prior written consent, of all or any part of the Property, or any interest in the Property. A "sale or transfer" means the conveyance of Property or any right, title or interest in the Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Property, or by any other method of conveyance of an interest in the Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Georgia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Security Deed:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having

Deed Book 43293 Pg   131

# SECURITY DEED
## (Continued)

Loan No: 8102332643                                                          Page 3

priority over or equal to the interest of Lender under this Security Deed, except for the Existing Indebtedness referred to in this Security Deed or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Security Deed:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of your credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Security Deed. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Security Deed, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Security Deed, to the extent compliance with the terms of this Security Deed would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Security Deed for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Security Deed also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Security Deed:

Deed Book 43293 Pg   132

## SECURITY DEED
### (Continued)

Loan No: 8102332643                                                                                    Page 4

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Security Deed, and (b) Grantor has the full right, power, and authority to execute and deliver this Security Deed to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Security Deed, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Security Deed shall survive the execution and delivery of this Security Deed, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Security Deed:

**Existing Lien.** The security interest arising under this Security Deed securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any security deed, mortgage, deed of trust, or other security agreement which has priority over this Security Deed by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**Assignment of Proceeds.** Grantor hereby transfers and assigns to Lender any and all proceeds, in excess of the amount required to satisfy the Existing Indebtedness, which may be or become payable by reason of foreclosure under the Existing Indebtedness. Grantor further authorizes, directs and instructs that any and all such proceeds be paid directly to Lender and not to Grantor, up to the full extent required to satisfy the Indebtedness, and Grantor hereby releases and relinquishes any and all right, title, interest and claims in and to such proceeds to that extent. The term "foreclosure" as used in this paragraph shall mean or include, without limitation, foreclosure of all or any part of the Property by exercise of any power of sale contained in the Existing Indebtedness, judicial foreclosure, conveyance in lieu of foreclosure, or other means.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Security Deed:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable attorneys' fees and costs and expenses, including court costs that are incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Security Deed:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Security Deed and take whatever other action is requested by Lender to perfect and continue Lender's security interest on the Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Security Deed, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Security Deed.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Security Deed or upon all or any part of the Indebtedness secured by this Security Deed; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Security Deed; (3) a tax on this type of Security Deed chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Security Deed, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Security Deed as a security agreement are a

Deed Book 43293 Pg   133

## SECURITY DEED
### (Continued)

Loan No: 8102332643                                                                                       Page 5

part of this Security Deed:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Security Deed in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Security Deed as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Security Deed may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Security Deed.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Security Deed:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1)  Grantor's obligations under the Credit Agreement, this Security Deed, and the Related Documents, and (2)  the liens and security interests created by this Security Deed on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Security Deed, Lender shall execute and deliver to Grantor a suitable satisfaction of this Security Deed and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Security Deed if any of the following happen: (A)  Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B)  Grantor does not meet the repayment terms of the Credit Agreement. (C)  Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**LENDER'S REMEDIES AND POWER OF SALE.** Upon the occurrence of an Event of Default, Lender shall have the following rights, powers, and remedies:

**Accelerate Indebtedness.** Lender, at Lender's option and election and without notice to Grantor, may declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment demand, protest or notice of any kind, all of which are expressly waived by Grantor.

**Entry and Possession.** Lender may enter upon the Property, or any part thereof, and take possession of the Property, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Property or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Property or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Property insured; and carry out or enter into agreements of any kind with respect to the Property.

**Collection of Rents.** Lender may collect and receive all Rents from the Property and apply the same to the Indebtedness, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Property, including the fees and expenses of Lender's attorneys, and agents.

**Payments.** Lender may pay any sum or sums deemed necessary or appropriate by Lender to protect the Property or any part of the Property or Lender's interest in the Property.

**Other Remedies.** Lender may exercise all rights and remedies contained in any Related Document, heretofore, concurrently herewith or in the future executed by Grantor in favor of Lender in connection with the transactions resulting in the Indebtedness or any part thereof.

**Appointment of Receiver.** Lender may make application to any court and be entitled to the appointment of a receiver to take charge of

Deed Book **43293** Pg   **134**

**SECURITY DEED**
(Continued)

Loan No: 8102332643

Page 6

the Property or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Property as security for the Indebtedness, or any other matter usually incident to the appointment of a receiver.

**UCC Remedies.** With respect to the Personal Property in which a security interest is herein granted, Lender may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (Sections 11-9-101 et. seq. of the Ga. Code Annotated) and any other applicable law. Grantor shall, if Lender requests, assemble all such Personal Property and make it available to Lender at a place or places to be designated by Lender, which shall be reasonably convenient to Grantor and Lender. Any notice required to be given by Lender of a public or private sale, lease or other disposition of the Personal Property or any other intended action by Lender may be delivered personally to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of Grantor last known to Lender at least five (5) business days prior to such proposed action, and shall constitute reasonable and fair notice to Grantor of any such action.

**Power of Sale.** Lender may sell the Property, or any part thereof or any interest therein, separately, at Lender's discretion, with or without taking possession thereof, at public sale before the courthouse door of the county in which the Property, or any part thereof, is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale by advertisement, published once a week for four weeks (without respect for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county. The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices. Lender may bid and purchase at any such sale, and Lender may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Property, or the part thereof or interest therein sold. Lender's conveyance may contain recitals as to the occurrence of an Event of Default, under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with. The recitals made by Lender shall be binding and conclusive upon Grantor, and the sale and conveyance made by Lender shall divest Grantor of all right, title, interest and equity that Grantor may have had in, to and under the Property, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Lender may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Lender as Grantor's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and confirms all of the acts and doings of Lender as Grantor's agent and attorney-in-fact hereunder. Lender's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The proceeds of each sale by Lender hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including attorneys' fees if applicable, then to payment of the Indebtedness, and the remainder, if any, shall be paid to Grantor. If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Lender shall determine, at Lender's option and in Lender's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Property, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over.

All of Lender's rights and remedies will be cumulative and may be exercised alone or together.

**Attorneys' Fees; Expenses.** If any part of the Indebtedness is collected by or with any assistance from or consultation with an attorney at law, Grantor shall pay to Lender as Lender's attorneys' fees, fifteen percent (15%) of such amount collected. Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Security Deed, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Security Deed. All copies of notices of foreclosure from the holder of any prior security interest which has priority over this Security Deed shall be sent to Lender's address, as shown near the beginning of this Security Deed. Any person may change his or her address for notices under this Security Deed by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender will have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so

Deed Book 43293 Pg   135

## SECURITY DEED
### (Continued)

Loan No: 8102332643                                                                                                    Page 7

used by the association, such proceeds shall be paid to Lender.

**Compliance with Regulations of Association.** Grantor shall perform all of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, Grantor shall perform all of the obligations imposed on Grantor by the lease of the Real Property from its owner.

**ANTI-MONEY LAUNDERING AND ANTI-TERRORISM.** Grantor represents, warrants and covenants to Bank as follows: (1) Grantor (a) is not and shall not become a person whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (b) does not engage in and shall not engage in any dealings or transactions prohibited by Section 2 of such executive order, and is not and shall not otherwise become associated with any such person in any manner violative of Section 2, (c) is not and shall not become a person on the list of Specially Designated Nationals and Blocked Persons, and (d) is not and shall not become subject to the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control regulation or executive order; (2) Grantor is and shall remain in compliance, in all material respects, with (a) the Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (b) the Uniting And Strengthening America By Providing Appropriate Tools Required To Intercept And Obstruct Terrorism (USA Patriot Act of 2001); and (3) Grantor has not and shall not use all or any part of the proceeds, advances or other amounts constituting or evidenced by the Obligations, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended.

**DEED TO SECURE DEBT.** This Security Deed is a "deed to secure debt" made in compliance with O.C.G.A. 44-14-60 et seq. and this conveyance is not a mortgage and shall not be held to be a mortgage. The grant of Grantor's right, title and interest as set forth herein is IN FEE SIMPLE .

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Deed:

**Amendments.** What is written in this Security Deed and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Security Deed. To be effective, any change or amendment to this Security Deed must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Security Deed are for convenience purposes only and are not to be used to interpret or define the provisions of this Security Deed.

**Governing Law.** This Security Deed will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Georgia without regard to its conflicts of law provisions. This Security Deed has been accepted by Lender in the State of Georgia.

**Joint and Several Liability.** All obligations of Grantor under this Security Deed shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Security Deed.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Security Deed unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Security Deed. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest and notice of dishonor.

**Severability.** If a court finds that any provision of this Security Deed is not valid or should not be enforced, that fact by itself will not mean that the rest of this Security Deed will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Security Deed even if a provision of this Security Deed may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Security Deed with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Security Deed on transfer of Grantor's interest, this Security Deed shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Security Deed and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Security Deed or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Security Deed.

**Waiver of Notice and Hearing and Homestead Exemption.** Grantor expressly waives: (1)  any right Grantor may have under the Constitution of the State of Georgia or the Constitution of the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Lender by this Security Deed and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and (2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Property as against the collection of the indebtedness, or any part of the

Deed Book 43293 Pg  136

## SECURITY DEED
### (Continued)

Loan No: 8102332643                                                                                        Page 8

Indebtedness. All waivers by Grantor in this provision have been made voluntarily, intelligently and knowingly by Grantor, after Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

DEFINITIONS. The following words shall have the following meanings when used in this Security Deed:

Borrower. The word "Borrower" means Michael F Antonelli and Noreen A Antonelli and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

Credit Agreement. The words "Credit Agreement" mean the credit agreement dated June 30, 2008, with credit limit of $199,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Credit Agreement is July 10, 2028. NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Security Deed in the events of default section of this Security Deed.

Existing Indebtedness. The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Security Deed.

Grantor. The word "Grantor" means Michael F Antonelli and Noreen A Antonelli.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Security Deed, together with any amounts expended to preserve and protect the Property and together with interest on such amounts as provided in this Security Deed.

Lender. The word "Lender" means RBC CENTURA BANK, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

Personal Property. The words "Personal Property" mean all equipment, fixtures, mobile homes, modular homes, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached, affixed to the Real Property excluding only that property which by operation of law is Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Security Deed less and except the Personal Property.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

Security Deed. The words "Security Deed" mean this Security Deed between Grantor and Lender, and includes without limitation all assignments and security interest provision relating to the Personal Property and the Rents.

Deed Book 43293 Pg  137

**SECURITY DEED**
(Continued)

Loan No: 8102332643                                                      Page 9

IN WITNESS WHEREOF, THIS SECURITY DEED HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF.  THIS SECURITY DEED IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS SECURITY DEED IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

GRANTOR: Michael F Antonelli by

X _____
Unofficial Witness

_____  (Seal)
Michael F Antonelli, BY CASIMIR S. REGENT, III
AS HIS ATTORNEY IN FACT

X _____
Noreen A Antonelli by

X _____  (Seal)
Noreen A Antonelli  BY CASIMIR S. REGENT, III
AS HER ATTORNEY IN FACT.
as her attorney in fact

Notary Public. _____ County

(NOTARY SEAL)

# EXHIBIT "B" FOLLOWS

Deed Book 43293 Pg  138

WHEN RECORDED MAIL TO:
RBC Centura
ATTN: Kent Williams
P.O. Box 500
Rocky Mount, NC  27802

# WAIVER OF GRANTOR'S RIGHTS

GRANTOR:  Michael F Antonelli and Noreen A Antonelli

LENDER:  RBC CENTURA BANK

DATE OF SECURITY DEED:  June 30, 2006

PROPERTY DESCRIPTION:  Located in: Cobb County, State of Georgia and is described as follows:

    See Attached Exhibit A for Legal Description

The Real Property or its address is commonly known as  3020 Lancaster Square, Roswell, GA  30076.

BY EXECUTION OF THIS PARAGRAPH, EACH GRANTOR EXPRESSLY:  (A)  Acknowledges the right to accelerate the debt and the power of attorney given herein to Lender to sell the property by non-judicial foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is required to be given under the provisions of the Security Deed;  (B)  Waives any and all rights which each Grantor may have under the Fifth and Fourteenth Amendments to the Constitution of the United States, the various provisions of the Constitution for the several States, or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided in the Security Deed;  (C)  Acknowledges that each Grantor has read the Security Deed and specifically that paragraph relating to the foreclosure provisions, and any and all questions regarding the legal effect of the Security Deed and its provisions have been explained fully to each Grantor and each Grantor has been afforded an opportunity to consult with counsel prior to executing the Security Deed;  (D)  Acknowledges that all waivers of the aforesaid rights of each Grantor have been made knowingly, intentionally and willingly by each Grantor as part of a bargained for loan transaction; and  (E)  Agrees that the provisions of this Waiver of Grantor's Rights are incorporated into and made a part of the Security Deed.

READ AND AGREED BY EACH GRANTOR:

IN WITNESS WHEREOF, THIS WAIVER HAS BEEN SIGNED AND SEALED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF.

IN WITNESS WHEREOF, THIS WAIVER HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF.  THIS WAIVER IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS WAIVER IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Deed Book 43293 Pg 139

**WAIVER OF GRANTOR'S RIGHTS**
(Continued)

Loan No: 8102332643                                                                 Page 2

Signed, Sealed and Delivered in the presence of:                    GRANTOR: Michael F Antonelli by

x _____                    x _Casimir S. Ryant_ _____ [Seal]
      Unofficial Witness                              Michael F Antonelli
                                                      as his attorney in Fact
                                                      Noreen A Antonelli by
Notary Public, _____ County     x _Casimir S. Ryant_ _____ [Seal]
                                                      Noreen A Antonelli
      (NOTARY SEAL)                                  as her attorney in Act

My Commission expires: _____

# EXHIBIT "C" FOLLOWS

Deed Book 43293 Pg - 140

WHEN RECORDED MAIL TO:
RBC Centura
ATTN: Kent Williams
P.O. Box 500
Rocky Mount, NC  27802

## CLOSING ATTORNEY'S AFFIDAVIT

GRANTOR:  Michael F Antonelli and Noreen A Antonelli

LENDER:  RBC CENTURA BANK

DATE OF SECURITY DEED:  June 30, 2006

PROPERTY DESCRIPTION:  Located in: Cobb County, State of Georgia and is described as follows:

See Attached Exhibit A for Legal Description

The Real Property or its address is commonly known as  3020 Lancaster Square, Roswell, GA  30076.

BEFORE THE UNDERSIGNED ATTESTING OFFICER personally appeared the undersigned closing attorney, who having been first duly sworn according to law states under oath as follows:

In closing the above loan but prior to the execution of the Security Deed and Waiver of Grantor's Rights by Michael F Antonelli and Noreen A Antonelli ("Grantor"), I reviewed with and explained to Grantor the terms and provisions of the Security Deed and particularly the provisions thereof authorizing Lender to sell the secured Property by a nonjudicial foreclosure under a power of sale, together with the Waiver of Grantor's Rights, and informed Grantor of Grantor's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Grantor of Grantor's rights.  After the review with and explanation to Grantor, Grantor executed the Security Deed and Waiver of Grantor's Rights.

Based on the review with and explanation to Grantor, it is my opinion that Grantor knowingly, intentionally and willingly executed the waiver of Grantor's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

IN WITNESS WHEREOF, THIS AFFIDAVIT HAS BEEN SIGNED AND SEALED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF.

x _____ (SEAL)
Closing Attorney

SWORN TO AND SUBSCRIBED before me this 30th day of June , 2006

x _____
Notary Public

My Commission expires:

JUNE
8
2009

Deed Book 43293 Pg   141
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 433 OF THE 1ST
DISTRICT, 2ND SECTION, FULTON COUNTY, GEORGIA, BEING LOT 23, BLOCK A, CHATHAM
PARK, AS PER PLAT RECORDED IN PLAT BOOK 250, PAGES 86 AND 87, FULTON COUNTY
GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY THIS REFERENCE FOR A
MORE COMPLETE DESCRIPTION.

THIS LOAN IS SUBJECT AND SUBORDINATE TO SECURITY DEED DATED JUNE 30, 2006
TO MER AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION IN THE PRINCIPAL
AMOUNT OF $1,492,500.00.

BORROWER SHALL PERFORM ALL OF BORROWER'S OBLIGATIONS UNDER SAID SECURITY DEED
MORTGAGE, DEED OF TRUST OR OTHER SECURITY AGREEMENT WITH A LIEN WHICH
HAS PRIORITY OVER THIS DEED.

# EXHIBIT "D" FOLLOWS

17013334
Deed Book 43515 Pg    88
Filed and Recorded Sep-22-2006 08:38am
2006-0318817
Georgia Intangible Tax Paid $4,477.50
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

Return To:

James W. Crocker
6400 Powers Ferry Road, Ste
350
Atlanta, GA 30339

Prepared By:

Bonnie Williamson
1000 MANSELL EXCHANGE WEST,
SUITE 360, ALPHARETTA, GA
30022

————————[Space Above This Line For Recording Data]————————

# SECURITY DEED
MIN 100065500000252410

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 30, 2006 together with all Riders to this document.
(B) "Borrower" is
MICHAEL F. ANTONELLI
NOREEN A. ANTONELLI

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

17013334

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011  1/01

-6A(GA) (0005).02
Page 1 of 14
Initials:
VMP MORTGAGE FORMS - (800)521-7291

Deed Book 43515 Pg   89

(D) "Lender" is SUNSHINE MORTGAGE CORPORATION

Lender is a CORPORATION
organized and existing under the laws of The State of Georgia
Lender's address is 1000 MANSELL EXCHANGE WEST, SUITE 360, ALPHARETTA, GA 30022

(E) "Note" means the promissory note signed by Borrower and dated June 30, 2006
The Note states that Borrower owes Lender one million four hundred ninety-two
thousand five hundred and 00/100                                           Dollars
(U.S. $1,492,500.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

Borrower Waiver/Atty Affd

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

17013334

-GA(GA) (0005).02          Page 2 of 14        Initials:          Form 3011 1/01

Deed Book 43515 Pg    90

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the  COUNTY
of    FULTON    :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
ALL THAT CERTAIN REAL PROPERTY AS MORE PARTICULARLY DESCRIBED ON EXHIBIT
A ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 12-1960·433-677                which currently has the address of
3020 LANCASTER SQUARE                                                    [Street]
ROSWELL                              [City] , Georgia 30076          [Zip Code]
("Property Address"):

    TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

17013334

-6A(GA) (0005).02                    Page 3 of 14          Initials:              Form 3011  1/01

Deed Book **43515** Pg     91

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

17013334

VMP ®-6A(GA) (0005).02                    Page 4 of 14      Initials: _____      Form 3011  1/01

Deed Book 43515 Pg     92

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts
due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires,
shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.
Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to
be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement"
is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and
Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9
and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such
amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in
accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in
such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply
the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can
require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable
Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in
any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time
specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually
analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the
Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing
or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower
any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest
shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the
Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to
Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow,
as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to
Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12
monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall
notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make
up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund
to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions
attributable to the Property which can attain priority over this Security Instrument, leasehold payments or
ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To
the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless
Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable
to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith
by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to
prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings
are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating
the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien
which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

17013334

-6A(GA) (0005).02                                    Page 5 of 14       Initials:              Form 3011  1/01

Deed Book 43515 Pg    93

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

17013334

-6A(GA) (0005).02          Page 6 of 14          Form 3011  1/01

Deed Book 43515 Pg    94

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

17013334

Initials: _____

-6A(GA) (0005).02    Page 7 of 14    Form 3011  1/01

Deed Book 43515 Pg     95

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(GA) (0005).02                      Page 8 of 14       Initials:                17013334
                                                                                  Form 3011  1/01

Deed Book 43515 Pg   96

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

17013334

-6A(GA) (0005).02                Page 9 of 14        Initials: _____        Form 3011  1/01

Deed Book 43515 Pg   97

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

17013334

-6A(GA) (0005).02                Page 10 of 14         Initials:            Form 3011 1/01

Deed Book 43515 Pg      98

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

17013334

-6A(GA) (0005).02              Page 11 of 14          Initials: _____        Form 3011  1/01

Deed Book 43515 Pg    99

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

17013334

-6A(GA) (0005).02                    Page 12 of 14       Initials: _____        Form 3011  1/01

Deed Book 43515 Pg   100

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

17013334

6A(GA) (0005) 02     Page 13 of 14     CM PF     Initials: CPK PF     Form 3011  1/01
                                        ASF              ADF

Deed Book 43515 Pg   101

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____(Seal)
MICHAEL F. ANTONELLI BY CASIMIR     -Borrower
S. REGENT, III AS HIS ATTORNEY
IN FACT

_____(Seal)
NOREEN A. ANTONELLI BY CASIMIR     -Borrower
S. REGENT, III AS HER ATTORNEY IN FACT

_____(Seal)
                                    -Borrower

_____(Seal)
                                    -Borrower

_____(Seal)
                                    -Borrower

_____(Seal)
                                    -Borrower

_____(Seal)
                                    -Borrower

_____(Seal)
                                    -Borrower

STATE OF GEORGIA,                                            County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,                                              County
State of Georgia

17013334

013334

Deed Book 43515 Pg   102

# FIXED/ADJUSTABLE RATE RIDER
### (One-Year Treasury Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 30th day of June, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
SUNSHINE MORTGAGE CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument
and located at:

3020 LANCASTER SQUARE, ROSWELL, GA  30076
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of                    6.375 %. The
Note also provides for a change in the initial fixed rate to an adjustable interest rate, as
follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first day of July, 2013                    , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed
interest rate changes to an adjustable interest rate, and each date on which my adjustable
interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an
Index. The "Index" is the weekly average yield on United States Treasury securities adjusted
to a constant maturity of one year, as made available by the Federal Reserve Board. The most
recent Index figure available as of the date 45 days before each Change Date is called the
"Current Index."

17013334

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX - Single
Family - Fannie Mae Uniform Instrument
Form 3182 1/01

VMP®-843R (0405)
Page 1 of 4       Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291

Deed Book 43515 Pg   103

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and three-quarters                                                                    percentage points
(                    2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than            11.375 % or less than                    2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than                  11.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

17013334

VMP®-843R (0405)                     Page 2 of 4            Initials: _____
                                                            CRM    CRM            Form 3182 1/01
                                                            ASF    ASF

Deed Book 43515 Pg  104

However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17013334

VMP-843R (0405)          Page 3 of 4      Initials:          Form 3182 1/01

Deed Book 43515 Pg   105

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_Michael F Antonelli by_

_Casimir S Regent_ _____ (Seal)
MICHAEL F. ANTONELLI BY     -Borrower
CASIMIR S. REGENT, III AS HIS
.. his attorney in fact
ATTORNEY IN FACT.

_Noreen A Antonelli by_

_Casimir S Regent_ _____ (Seal)
NOREEN A. ANTONELLI BY CASIMIR  -Borrower
S. REGENT AS HER ATTORNEY IN FACT
as his attorney in fact

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

17013334

VMP-843R (0405)          Page 4 of 4          Form 3182 1/01

013334

Deed Book 43515 Pg    106

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 30th                    day of
June, 2006                                    , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to SUNSHINE MORTGAGE CORPORATION

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: 3020 LANCASTER SQUARE, ROSWELL, GA  30076

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
DECLARATION OF CONDITIONS, COVENANTS, AND RESTRICTIONS

(the "Declaration"). The Property is a part of a planned unit development known as
CHATHAM PARK

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.
   PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
   A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

17013334

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01
Wolters Kluwer Financial Services        Page 1 of 3        Initials:  _____   _____
VMP®-7R (0411).01                                                           AIF    AIF

Deed Book 43515 Pg 107

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____  _____  17013334

VMP®-7R (0411).01                    Page 2 of 3                    Form 3150 1/01

Deed Book 43515 Pg   108

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

Michael F. Antonelli by

*Casimir S. Regent* _____ (Seal)
MICHAEL F. ANTONELLI BY            -Borrower
CASIMIR S. REGENT, III AS HIS
as his attorney in fact
ATTORNEY IN FACT.

Noreen A Antonelli by

*Casimir S. Regent* _____ (Seal)
NOREEN A. ANTONELLI BY            -Borrower
CASIMIR S. REGENT, III AS HER
as his attorney in fact
ATTORNEY IN FACT.

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

17013334

VMP®-7R (0411).01            Page 3 of 3            Form 3150 1/01

Deed Book 43515 Pg   109

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 433 OF THE 1ST
DISTRICT, 2ND SECTION, FULTON COUNTY, GEORGIA, BEING LOT 23, BLOCK A,  CHATHAM
PARK, AS PER PLAT RECORDED IN PLAT BOOK 250, PAGES 86 AND 87,  FULTON COUNTY
GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY THIS REFERENCE FOR A
MORE COMPLETE DESCRIPTION.

17013334

GEORGIA -                                                                    17013334
GRANTOR: MICHAEL F. ANTONELLI & NOREEN A. ANTONELLI

Deed Book 43515 Pg  110
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

LENDER: SUNSHINE MORTGAGE CORPORATION

DATE OF SECURITY DEED: June 30, 2006

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____ (Seal)
MICHAEL F. ANTONELLI BY CASIMIR S. REGENT -Grantor
III AS HIS ATTORNEY IN FACT.

_____ (Seal)
NOREEN A. ANTONELLI BY CASIMIR S. REGENT -Grantor
III AS HER ATTORNEY IN FACT.

_____ (Seal)
                                                          -Grantor

_____ (Seal)
                                                          -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation given to Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____    _____
                                                                              Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____    _____
MICHAEL F. ANTONELLI BY CASIMIR S. REGENT, III    NOREEN A. ANTONELLI BY CASIMIR S. REGENT, III
AS HIS ATTORNEY IN FACT.                                       AS HER ATTORNEY IN FACT.

VMP-960(GA) (0307)                    VMP Mortgage Solutions (800)521-7291

# EXHIBIT "E" FOLLOWS

Deed Book 57565 Pg 92
Filed and Recorded May-31-2017 08:39am
2017-0192624
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: ASSIGNMENT TEAM, WELLS FARGO BANK, N.A. MAC: N9289-016 PO BOX 1629, EAGAN, MN 55121-4400

## CORPORATE ASSIGNMENT OF SECURITY DEED

Fulton, Georgia
"ANTONELLI"

MIN #: 100065500000262410  SIS #: 1-888-679-6377

PREPARED BY: WELLS FARGO BANK, N.A.

Date of Assignment: May 24th, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR15 at 636 GRAND REGENCY BLVD., BRANDON, FL 33510

Executed By: MICHAEL F. ANTONELLI NOREEN A. ANTONELLI  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS
Date of Security Deed: 06/30/2006 Recorded: 09/22/2006 in Book/Reel/Liber: 43515 Page/Folio: 88 as Instrument No.: 2006-0318817 in the County of Fulton, State of Georgia.

Assessor's/Tax ID No. 12 196004330877

Property Address: 3020 LANCASTER SQUARE, ROSWELL, GA 30076

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security Deed having an original principal sum of $1,492,500.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Security Deed.

TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to the terms contained in said Security Deed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS
On _5-24-17_

By: _____
Bhavdip Chhotalal Chauhon
Assistant Secretary

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

Jason Michael Nieling

*PK2*PK2WFEM*05/24/2017 07:06:33 AM* WFEM01WFEMA0000000000000001655662* GAFULTO* GASTATE_MORT_ASSIGN_ASSN *BCWFEN*