IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>MICHAEL F. ANTONELLI and NOREEN A. ANTONELLI,<br><br>    Debtors. | Case No. 17-64177-PMB<br>Chapter 7 |
| NEIL C. GORDON, Chapter 7 Trustee for the Estates of Michael F. Antonelli and Noreen A. Antonelli,<br><br>    Movant,<br><br>v.<br><br>PNC BANK, N.A. f/k/a RBC CENTURA BANK, WELS FARGO BANK, N.A., CHATHAN PARK COMMUNITY ASSOCIATION, INC., FULTON COUNTY TAX COMMISSIONER, MICHAEL F. ANTONELLI and NOREEN A. ANTONELLI,<br><br>    Respondents. | CONTESTED MATTER<br><br>ADVERSARY PROCEEDING NO. 18-05183-PMB |

### WELLS FARGO BANK, N.A.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Wells Fargo Bank, N.A. ("Wells"), and files this Reply in Support of its Motion for Summary Judgment[1], respectfully showing this Honorable Court as follows:

### I. INTRODUCTION

The Trustee accuses Wells of using "pretzel logic" regarding the subordination between PNC and Wells. However, it is the Trustee who utilizes fallible, twisted reasoning to support its claims, as the facts are glaringly obvious and straightforward: 1) a refinance closing occurred with a first loan in the amount of $1,492,500.00 and a second loan/revolving line of credit for $199,000.00; 2) two Security Deeds were executed on the same day by the attorney-in-fact for the borrowers; 3) there was no separate "subordination agreement" executed as the subordination was

---

[1] Capitalized terms not defined in this Reply shall have the meaning as-defined within Wells' *Brief in Support of Its Motion for Summary Judgment* [Doc. No. 33].

1

reflected on the face of the RBC Security Deed; 4) Page 1 of the revolving line of credit describes an attached Exhibit "A" which includes the legal description for the Property; 5) said Exhibit "A" also contains not only the legal description for the Property, but also includes the clear and unambiguous language of the subordination of the revolving line of credit to the first loan; and 6) said Exhibit "A" is recorded as the last page of the revolving line of credit, thereby creating the entirety of the revolving line of credit. Wells now stands in the shoes of the first loan.  PNC now stands in the shoes of the revolving line of credit. PNC is clearly subordinate to Wells. Based upon this clear documentation and reasons set forth below, summary judgment should only be proper for Wells Fargo.

## II. PROCEDURAL POSTURE

In addition to the procedural posture set forth within Wells' Motion, Wells highlights the below substantive procedural facts.  The Trustee filed its partial motion for summary judgment on August 27, 2019 to determine the respective priority of the RBC Security Deed and the Sunshine Security Deed, together with its statement of material facts ("Trustee's SOMF").  [Doc. Nos. 27-31].  On August 30, 2019, Wells filed its motion for summary judgment, its brief in support, and a statement of material facts ("Wells SOMF") before the Court. [Doc. Nos. 32-34].  On September 25, 2019, pursuant to an extension provided by Trustee [Doc. No. 36], Wells timely filed a Response to Plaintiff's Motion for Partial Summary Judgment [Doc. 37]. Out of an abundance of caution, and in addition to the Wells SOMF which complied with BLR 7056-1(a)(2) as-filed on August 30, 2019 [Doc. No. 34], Wells filed an additional response to Trustee's SOMF [Doc. No. 40].  On September 27, 2019, pursuant to an extension provided by Wells [Doc. No. 36], Trustee timely filed its Response in Opposition to Wells' Motion [Doc. No. 38], as well as Trustee's deficient Response to Statement of Undisputed Material Facts.  [Doc. No. 39].  On October 9, 2019, Trustee filed its Reply to Response of Wells [Doc. No. 41].

Notably, PNC, as-holder of the RBC Security Deed, failed to file a timely response to Wells' Motion, which is therefore unopposed and deemed admitted.[2] *See generally*, Docket.  As

---

[2] BLR 7007-1(c) ("Any party opposing a motion must file and serve the party's response… except the time to respond to a motion for summary judgment is twenty-one days.")  *See also* Simon v. Kroger Co., 743 F.2d 1544, 1546-47 (11th Cir. 1984) (failure to timely file a response to summary judgment shall indicate no opposition to the motion). *See also* BLR 7056-1(c).  Accordingly, PNC's response to Wells' Motion was due no later than September 20, 2019.

2

a result, and as required by BLR 7007-1(c), PNC's failure to timely oppose Wells' Motion, or for PNC to contest Wells' SOMF, compels this Court to grant Wells' motion.

### III. ARGUMENT AND CITATION OF AUTHORITY

**A. THE SUNSHINE SECURITY DEED IS SENIOR TO ANY INTEREST OF PNC IN THE PROPERTY.**

> *1. The RBC Security Deed Expressly Subordinated Itself to the Sunshine Security Deed on the Face of Said Instrument.*

The RBC Security Deed expressly subordinates itself to the Sunshine Security Deed. Within the RBC Security Deed itself is an express statement on its face that the RBC Security Deed "IS SUBJECT AND SUBORDINATE TO SECURITY DEED DATED JUNE 30, 2006 TO MER [sic] AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION IN THE PRINCIPAL AMOUNT OF $1,492,500.00." [Doc. No. 28, p. 18]. It is uncontested that the Sunshine Security Deed was granted, and funds issued therefrom,[3] based upon that concession by RBC.

Exhibit A, in addition to setting forth the legal description for the Property[4], states that it modifies "this loan" and "this deed". [Doc. No. 28, p. 18]. Exhibit A contemplates that it is a part of the RBC Security Deed by its express terms. Additionally, the balance of the RBC Security Deed makes numerous instructions to "[S]ee Attached Exhibit A for Legal Description". *E.g.* [Doc. No. 28, pp. 6, 15. 18]. Failure for this Court to consider Exhibit A as part of the RBC Security Deed would otherwise result in a portion of the RBC Security Deed meaningless, in contravention to Georgia law,[5] and would fail to properly describe the Property being encumbered. Therefore, despite the Trustee's argument that Exhibit A is a portion of an independent document, this is clearly belied when examining Exhibit A and the entirety of the RBC Security Deed.

In an attempt to misdirect attention from Trustee's admissions, Trustee attempts to restate and mischaracterize case law before this Court. The Trustee attempts to take the facts of <u>Cameron</u>

---

[3] Additionally, an executed Settlement Statement from the closing of the Sunshine Security Deed reflects not only that funds issued, that funds were contributed in its closing from a "2nd Mtg." (clearly being the RBC Security Deed), but more importantly that the funds were used to pay off prior security deeds. [Doc. No. 37, Ex. B.]
[4] No party within the instant action has asserted that the legal description does not describe the Property at issue.
[5] <u>Eckerd Corp. v. Alterman Properties, Ltd.</u>, 589 S.E.2d 660, 665 (Ga. App. 2004).

3

v. Churchill Mortg. Corp.[6] and lead a reader away from the predecessor and successor cases. These cases all hold that a security deed may subordinate itself to another instrument on the face of the same security deed. The Cameron line of cases require this Court to grant Wells' Motion.

For instance, the predecessor case to Cameron is a 1931 Supreme Court of Georgia case where one party sold two undeveloped lots to another and simultaneously took back a security deed from the purchaser. The security deed, which was recorded first, contained an agreement where the seller-lender agreed to subordinate its security deed to an unspecified and anticipated future construction loan to develop the two lots at issue. Mitchell v. West End Park Co., 156 S.E. 888 (Ga. 1931). Simultaneously, the purchaser took out a short-term construction security deed from a third-party lender to develop and improve the two lots. Id. The improvement of the two lots stalled out and was incomplete, and materialmen proceeded to attempt to foreclose on their liens as to the two lots. Id. On appeal before the Supreme Court was whether the seller-lender had a first priority lien on the two lots, or whether the third-party lender as-holder of a short-term construction security deed, was first priority based on the language on the face of the seller-lender's security deed. Id.

As held by the Supreme Court of Georgia, "where facts apparent on the face of the mortgages show that it was the intention of the parties to give preference to one over the other, the lien so preferred will be enforced . . . ." Mitchell 156 S.E. at 891. Further, even though the third-party lender was not expressly referenced within the seller-lender's security deed, "the advancement of money by the makers of the building loans is sufficient acceptance of the vendor's agreement to subordinate purchase-money mortgages to building loans on the same property, without such makers joining in the agreements." Mitchell 156 S.E. at 891.

Here, analogous to Mitchell, is a first-in-time recorded security deed, namely the RBC Security Deed. In applying Mitchell, the subordination of the RBC Security Deed to the Sunshine Security Deed did not occur at the moment the RBC Security Deed was granted in favor of PNC's predecessor; instead, the 'advancement of money by [the Sunshine Security Deed] is sufficient acceptance of [PNC's predecessor] agreement to subordinate the [RBC Security Deed] to the [Sunshine Security Deed], without [PNC's predecessor] joining in the agreements.' Mitchell, as a concise holding of Georgia law on an analogous transaction, is literally a fill-in-the-blank statement of law in order to apply the undisputed facts within the instant case to the Supreme Court

---

[6] Cameron v. Churchill Mortg. Corp., 290 S.E.2d 474 (Ga. 1982).

4

of Georgia's long-established precedent.  Mitchell does not require a separate 'subordination agreement,' as the Trustee fervently wishes, in order for a security deed to subordinate itself to a subsequent security deed; a first-recorded security deed by its own terms can expressly offer to subordinate itself to a subsequent security deed, as the subordination is self-executing and self-subordinating upon the advancement of money within the subsequent security deed.[7]  This is exactly what Mitchell holds, which Cameron and its progeny follow, and exactly what occurred within the instant case before this Court.

Further, in the instant case, the subsequent security deed was not indefinitely or vaguely defined as to leave an unsuspecting title examiner to guess as to what security deed the RBC Security Deed subordinated itself to.  The RBC Security Deed, by its own terms, expressly subordinated itself to the Sunshine Security Deed, explicitly identifying the Sunshine Security Deed by (1) its execution date; (2) the grantee of the Sunshine Security Deed; and (3) the principal amount of the Sunshine Security Deed.  Consequently, the Sunshine Security Deed is clearly within Trustee's chain of title, to the extent that this Court may otherwise hold the Sunshine Security Deed is somehow improperly executed.

Accordingly, the RBC Security Deed by its own terms expressly and unequivocally subordinates itself, on the face of the document, to the Sunshine Security Deed, with the Trustee having notice of the same.

### 2. PNC's Closing Attorney Expressly Admits that it was the Intent to Subordinate the RBC Security Deed to the Sunshine Security Deed.

Wells has provided a valid and dispositive affidavit from the closing attorney for both the RBC Security Deed and Sunshine Security Deed which further buttresses the subordination contained on the face of the RBC Security Deed.  PNC's own closing attorney and settlement agent

---

[7] As subsequently noted, in agreeing with Cameron's holding, no additional consideration is required to subordinate a security deed to another. "Cameron, however, recognized that in Georgia law, 'a subordination clause in a mortgage or other security agreement needs no consideration other than the secured indebtedness.' 'The prospect of the enhanced value of the property is sufficient consideration to support an agreement to subordinate a security deed to [another security deed]" KeyBank National Association v. Fairpoint, LLC, 2008 WL 11335162 at *8 (N.D. Ga. Jun. 23, 2008) (citing Cameron 290 S.E.2d at 476).

5

for the RBC Security Deed averred under penalty of perjury[8] that it was the intent of PNC[9] "at the time of the closing of the respective security deeds that the Sunshine Security Deed was to convey a first priority and senior interest in the Property… senior to any interest… conveyed pursuant to the RBC Security Deed." [Doc. No. 37, Ex. A].

Accordingly, PNC or any other party who may be standing in its shoes, would be estopped from denying its intent to subordinate the RBC Security Deed to the Sunshine Security Deed.

### 3. *PNC Failed to File a Timely Response to Wells' Motion, Which Therefore Requires This Court to Find that the Sunshine Security Deed is Senior to PNC's Interest.*

PNC itself does not contest that the document identified by Wells in Wells SOMF comprises the entirety of the RBC Security Deed. The applicable Federal Rules of Bankruptcy and Civil Procedure, as well as this Court's local rules, require this Court to grant Wells relief as-against PNC in holding that the Sunshine Security Deed is first-priority and senior to any interest in the Property as to PNC's interest as-holder of the RBC Security Deed.

PNC, despite being represented by counsel of-record, failed to file a response whatsoever to Wells' Motion. Pursuant to Bankruptcy Local Rule 7007-1, "[a]ny party opposing a motion must file and serve the party's response… except the time to respond to a motion for summary judgment is twenty-one days." BLR 7007-1(c). Further, a party's failure to timely file a response to summary judgment shall indicate no opposition to summary judgment. Simon v. Kroger Co., 743 F.2d 1544, 1546-47 (11th Cir. 1984). Additionally, under Bankruptcy Local Rules, a party's failure to respond whatsoever to summary judgment, including the statement of material facts cited in support, shall deem those material facts admitted against the non-responding party. BLR 7056-1(a)(2). *See also* In re Jackson, 2019 WL 4458360 at *2 (Bankr. N.D. Ga., Sept. 17, 2019).

PNC, as a party to this action, was electronically served the Wells' Motion on August 30, 2019, and was required to file a response to Wells' Motion on or before September 20, 2019. PNC failed to file any items whatsoever with the Court. Given PNC's failure to respond or oppose

---

[8] The Trustee attempts to discredit the closing attorney by stating that he falsely testified in the affidavit because it states that the document was signed by the "debtors" when in fact the document was signed by an "attorney-in-fact." As shown in Brown v. Colquitt, 73 Ga. 59, 54 Am. Rep. 867 (1884), the acts of the attorney in fact acting within the terms of the attorney in fact's agency ARE THE ACTS OF THE PRINCIPAL. Therefore the execution by the attorney-in-fact was, as a matter of law, an execution by the borrowers.

[9] PNC is successor in interest to the RBC Security Deed by virtue of its merger to RBC Centura Bank in 2012 [Doc. No. 28, ¶5].

6

Wells' Motion, the undisputed material facts show that the RBC Security Deed consists of the entirety of that document attached to Trustee's SOMF [Doc. No. 34, ¶¶ 10, 12, 13] and that the RBC Security Deed expressly subordinates itself to the Sunshine Security Deed by its terms [Doc. No. 34, ¶¶ 14-15], which support the legal argument that the Sunshine Security Deed, as-serviced by Wells, is senior to the RBC Security Deed as a matter of law.[10]  PNC's failure to oppose and respond to Wells' Motion also requires this Court to deny the Trustee's Motion, which solely sought for this Court to determine the respective priorities between the Sunshine Security Deed and the RBC Security Deed [Doc. No. 27].[11]

Accordingly, as a matter of law, PNC does not oppose the relief sought within Wells' motion, which requires that this Court find that the Sunshine Security Deed is senior to any interest in the Property of PNC, as-holder of the RBC Security Deed.

### 4. The Trustee Expressly Admitted that the Sunshine Security Deed is senior to the RBC Security Deed.

The Court is required to find that the Sunshine Security Deed is senior to any interest in the Property of the RBC Security Deed due to admissions made by the Trustee.  Despite Trustee's argument that only a 'strained' reading of Trustee's SOMF could result in the Court utilizing its own statements against Trustee's position, the Court is clearly required to apply Trustee's binding admissions and accordingly grant Wells' Motion. As aptly stated, "[j]udicial admissions are formal concessions … that are binding upon the party making them." Ussery v. Allstate Fire and Casualty Ins. Co., 150 F.Supp. 3d 1329, 1345 (M.D. Ga. 2015).[12]  Further, it is undisputed that a statement of material facts constitutes facts admitted and presented to a court.[13]

Here, the entirety of Trustee's admission within the Trustee's SOMF, which Wells contends is dispositive of the priority question between the security deeds, and requires the Court to grant the entirety of Wells' Motion, is:

---

[10] [Doc. No. 33, pp. 10-11].

[11] Trustee's Partial Motion for Summary Judgment [Doc. No. 26] and Brief in Support [Doc. No. 27] seeks for this Court to find that PNC, as holder of the RBC Security Deed, is senior to the Sunshine Security Deed.  As PNC did not oppose or respond to Wells' Motion, Brief, or SOMF, Trustee's Partial Motion is accordingly mooted by way of PNC's failure to oppose the relief sought by Wells.

[12] Notably, "judicial admissions are proof possessing the highest probative value.  Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, **but beyond the power of evidence to controvert them**." Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983) (citing Hill v. FTC, 124 F.2d 104, 106 (5th Cir. 1941)(emphasis added)).

[13] As set forth within Trustee's own SOMF, Trustee contends these statements, which are being cited as judicial admissions herein, are items "which there is no dispute." [Doc. No. 28].

7

> "True and correct copies of the [RBC Security Deed], along with the waiver of grantor's rights and closing attorney's affidavit for the [RBC Security Deed], and the [Sunshine Security Deed] are attached to [the Statement of Material Facts] as Exhibit 'A' and Exhibit 'B', respectively." Doc. No. 28, ¶ 9.

The Trustee expressly states and admits in SOMF that the "waiver of grantor's rights and closing attorney's affidavit" in Trustee's Exhibit A to its SOMF are "**for the [RBC Security Deed]**." Id. (emphasis added). The Trustee's own admission brings this court to the same conclusion as the Trustee did, that the waiver of grantor's rights and closing attorney's affidavit are "for the [RBC Security Deed]" and that Exhibit A is to be construed as one complete document, constituting the RBC Security Deed.[14] Therefore, given Trustee's own undisputed statements of fact, that Exhibit A to Trustee's SOMF constitutes the entirety of the RBC Security Deed, it pretermits all of Trustee's arguments in opposition to Wells Fargo's Motion for Relief. *See* Doc. No. 38.[15]

Particularly based on Trustee's admission, it is uncontested that the RBC Security Deed contains a legal description which expressly states, in all caps, that the RBC Security Deed "IS SUBJECT AND SUBORDINATE TO SECURITY DEED DATED JUNE 30, 2006 TO MER [sic] AS NOMINEE FOR SUNSHINE MORTGAGE CORPORATION IN THE PRINCIPAL AMOUNT OF $1,492,500.00." [Doc. No. 28, p. 18]. To the extent there was an argument that the Sunshine Security Deed was not properly attested and, alone, does not provide constructive notice[16], the RBC Security Deed would place a hypothetical bona fide purchaser on constructive or inquiry notice as to the existence of the Sunshine Security Deed, as discussed further herein.

It is undisputed the RBC Security Deed is comprised of the totality of Exhibit A to Trustee's SOMF [Doc. No. 28, ¶9]. The face of the RBC Security expressly reflects that the Sunshine Security Deed was intended to be in first position, senior to the RBC Security Deed, and Georgia law accordingly provides that the Sunshine Security Deed has priority.

---

[14] Trustee appears to continue to controvert its own undisputed statement of fact and instead illogically argue that the waiver of grantor's rights and closing attorney's affidavit are somehow distinct documents, despite the express admissions in Trustee's SOMF. *See*, *e.g.*, Doc. No. 38, p.9.

[15] Trustee contends, despite the admissions within the SOMF, that the waiver of grantor's rights and closing attorney's affidavit are independent documents, separate from the RBC Security Deed [Doc. No. 38, pp. 9-10]. This specious contention serves as the basis for the balance of Trustee's opposition, including arguing that the RBC Security Deed does not provide constructive notice of the Sunshine Security Deed and contesting Wells' seniority over PNC, which PNC itself does not dispute.

[16] The Trustee, by virtue of the undisputed facts within its SOMF, cannot subsequently argue this point, not only due to the admission of the contents of the RBC Security Deed but also due to Trustee's admission of the contents of the Sunshine Security Deed, as discussed further below.

### 5. *Trustee Failed to Refute Wells' Statement of Material Facts in Accordance with Local Rules; Accordingly, Wells' Statement of Material Facts is Admitted.*

In order to ferret out disputed issues before a court on summary judgment, the Northern District of Georgia enacted multiple local rules to further aid a court in narrowing the matters at issue for its review on summary judgment. Particularly, while this matter is an adversary proceeding before the Bankruptcy Court of the Northern District of Georgia, the Bankruptcy Local Rules expressly state that these rules "supplement the Local Rules of Practice for the United States District Court for the Northern District of Georgia," as well as the general respective Federal Rules. BLR 1001-3.  The Local Rules for the United States District Court for the Northern District of Georgia require that, upon a motion for summary judgment any respondent to said motion must "directly refute the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number)," or else movant's facts are deemed admitted.  LR 56(B)(2)(a)(2)(i).

Here, Trustee filed its Response to Statement of Undisputed Material Facts on September 27, 2019 [Doc. No. 39].  While Trustee does not dispute a number of Wells' SOMF, for the twelve (12) Statements which Trustee appears to dispute, Trustee does not identify or cite to any evidence in the course of disputing Wells' Statements.  More particularly, Trustee fails to concisely respond as to the foundation and basis of any of its 'disputes' whatsoever, and Trustee further fails to cite to any evidence of-record, by page or paragraph number whatsoever in any 'disputed' response by Trustee, as required by the express language of the local rules.[17]

Accordingly, as Trustee failed to conform its response to Wells' SOMF in accord with local rules, and more particularly failed to aid this Court and opposing counsel as to the nature, foundation, and basis of any purported disputes of material fact, Wells' SOMF is accordingly admitted as a matter of law.  This Court should therefore grant Wells' Motion for Summary Judgment based on the admitted SOMF, as filed by Wells. [Doc. No. 34].

**B. THE TRUSTEE HAD RECORD NOTICE OF THE SUNSHINE SECURITY DEED AND ITS PERFECTED INTEREST IN THE PROPERTY.**

### 1. *The RBC Security Deed is Comprised of the Entirety of the Document, as Admitted by the Trustee and Uncontested by PNC.*

---

[17] See Doc No. 39, ¶¶ 3, 4, 7, 10-17, 20.

As shown in Section A(4), *supra*, the Trustee more succinctly admitted in its SOMF that its Exhibit B comprises the entirety of the Sunshine Security Deed, which Wells contends is dispositive as to any notice arguments the Trustee raises, and further requires this Court to grant Wells' Motion.

In the SOMF, Trustee stipulates as to the contents of the Sunshine Security Deed, which would accordingly place the Trustee on notice of said instrument.  Particularly, Trustee expressly states and admits that the "… [Sunshine Security Deed] **are attached to [the Statement of Material Facts] … as Exhibit B**, respectively." Id. (emphasis added).  No extensive analysis of Trustee's own words is required to conclude as Trustee did, namely that Exhibit B in its entirety constitutes the Sunshine Security Deed and that Trustee accordingly had record notice of the same.

As more particularly discussed below, given recent federal case law, the Waiver of Borrower's Rights would, at minimum, have provided the Trustee notice of the Sunshine Security Deed within its chain of title, which additionally requires this Court to grant Wells' motion.

### 2. *The Trustee, at Minimum, Had Constructive Notice of the Sunshine Security Deed as a Matter of Law.*

The Trustee  continues to contest whether it had notice of the Sunshine Security Deed as a hypothetical bona fide purchaser pursuant to Bankruptcy Code 543(a).  Particularly, under federal case law, for a trustee to qualify as a bona fide purchaser for value without notice, "a party must have neither actual nor constructive notice of the matter at issue." In re Jackson, 2019 WL 4458360 at *3 (Bankr. N.D. Ga. Sept. 17, 2019).  Pursuant to Georgia law, a "purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title." Id. More particularly, a chain of title includes "all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument." Id.

The Trustee expressly admitting as to the entirety of the Sunshine Security Deed and its contents, cures any alleged attestation issues.   In a vainglorious attempt by the Trustee to whitewash over the fatal defects and admissions made within the instant proceeding, the Trustee has wholly ignored the basic tenet that, under bankruptcy case law, a trustee does not have any greater rights than a bona fide purchaser or other creditor would under applicable state law. See *In re Henderson*, 284 B.R. 515, 519 (Bankr. N.D. Ga. 2002). Despite this basic tenet and the

10

various undisputed facts within this adversary proceeding, the Trustee nonetheless continues to obfuscate the matter before the Court.

Inherent within the concept of constructive notice under Georgia law is the duty to inquire, as enshrined in O.C.G.A. § 23-1-17, which states that "[n]otice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led." Accordingly, when information "appears in the county's records or occurs during the sale of real property that would excite a reasonable purchaser's attention regarding the existence of a lien or other issue affecting the title to the property, the purchaser has a duty to make a further inquiry." Gallagher v. Buckhead Cmty. Bank, 683 S.E.2d 50, 54 (2009); *see also* Hamilton State Bank v. Kelly Capital Invs., LLC, 779 S.E.2d 757, 764 (2015). Therefore, the notice which creates this duty to inquire "is also constructive notice of everything to which it is afterward found that such inquiry might have led." Id. Additionally, as held by the Georgia Court of Appeals, a subordination agreement in the chain of title serves as notice of the subordinated interests referenced. VATACS Group, Inc. v. Homeside Lending, Inc., 623 S.E.2d 534 (Ga. App. 2005).

Here, it is undisputed that there were several items within the chain of title of the Property at the time of the filing of the Petition by the Debtors: (1) recorded powers of attorney, as-executed by the Debtors and recorded immediately preceding the Sunshine Security Deed, authorizing an attorney-in-fact to execute a refinance deed to secure debt in favor of Sunshine Mortgage Corporation; (2) the RBC Security Deed, which PNC and the Trustee admit on its face expressly subordinates itself to a Security Deed granted on the same day in favor of MER [sic], as nominee for Sunshine Mortgage Corporation; and (3) the contested Sunshine Security Deed, which Trustee nonetheless disputes despite its prior admissions which require the Court to grant Wells' Motion.

Based on the recorded powers of attorney and the express language on the face of the RBC Security Deed, these properly recorded documents are inherently the type of documents in a chain of title which would 'excite the attention and put a party on inquiry' to cause a party to make further inquiry as to the existence and status of a Security Deed, granted contemporaneously to the RBC Security Deed and the executed powers of attorney, which would put an ordinary man of prudence on his guard for an additional outstanding security deed on the Property at issue. As contemplated by this Court previously, such a "circumstance… is sufficient to constitute actual or constructive notice." In re Jackson at *4.

11

Accordingly, at a minimum, the Trustee had constructive, if not actual notice, of the Sunshine Security Deed, and therefore this Court is required to grant Wells' Motion as a matter of law.

### *3. Alternatively, the Remedial Provisions Provided Under Georgia Law Cure any Purported Attestation Defect within the Sunshine Security Deed.*

In the event that this Court elects to overlook Trustee's prior admissions, which are dispositive of this case and require the Court to grant Wells' Motion, this Court alternatively may consider the remedial provisions under Georgia law which would require the Court to grant Wells' Motion.

As noted by Trustee Neil C. Gordon, Kim is contemporaneous to "Gordon I" and slightly pre-dates "Gordon II," both cases certified as questions to the Supreme Court of Georgia by the Eleventh Circuit. However, subsequent bankruptcy cases have had the benefit of fully digesting Kim, "Gordon I", and "Gordon II", and come to the same conclusion as Kim. Particularly, a Middle District of Georgia Bankruptcy Case, In re Perry, discards similar arguments that Trustee sets forth and instead adheres to clear Eleventh Circuit precedent. In re Perry, 565 B.R. 442 (Bankr. M.D. Ga. 2017) (*extensively citing and discussing* In re Kim, 571 F.3d 1342 (11th Cir. 2009); *see also* In re Jones, 580 B.R. 916, 922 (Bankr. M.D. Ga. 2017)). Particularly, the Perry Court seizes on the same holding and reasoning by the Eleventh Circuit in Kim, noting that the Waiver and accompanying Affidavit use the same language analyzed by the Eleventh Circuit, with the Waiver expressly incorporating itself by language into the rest of the security deed at issue. Perry, 565 B.R. at 447. Even though the body of the Security Deed in Perry does not expressly list a Waiver of Borrower's Rights as being part of the Security Deed, the Perry Court still finds that the definition of the security deed, which incorporates all riders, contemplates the inclusion of the Waiver of Borrower's Rights as part of the security deed. Id. at 448.

In the instant case, not only does the Waiver of Borrower's Rights exactly mirror the Perry and Kim language, the Sunshine Security Deed explicitly lists as one of the riders to the security deed as "Borrower Waiver/Atty Affd". Accordingly, under existing Eleventh Circuit precedent, as re-affirmed by In re Perry, this Court is required to alternatively find that the Sunshine Security Deed, by virtue of the Waiver of Borrower's Rights and Attorney Affidavit, are duly recorded and in the chain of title of Trustee.

Additionally, as noted by the Perry Court, the Attorney Affidavit may also satisfy the remedial statute to cure any attestation defects pursuant to O.C.G.A. § 44-2-18, if the Affidavit

12

testifies to both the execution and the attestation of the Security Deed, as required by statute.  Id. The Affidavit may cure any defect in attestation as the signing individual witnessed the execution of the security deed with its attestation.  Id.  Here, the Affidavit mirrors the language at issue in both Perry and Kim, which both satisfied the requirements of O.C.G.A. § 44-2-18 and therefore provided notice within the chain of title to all parties.  Accordingly, the Court must find that, in the alternative, the Attorney Affidavit complies with O.C.G.A. § 44-2-18 as a matter of law.

### 4. The Sunshine Security Deed, as Executed by Virtue of a Power of Attorney, Placed the Trustee on Actual Notice of Said Instrument.

In setting forth its argument to the Court as to how, in direct contravention of Georgia law, a security deed as-executed by an attorney-in-fact is somehow improperly executed, Trustee omits one crucial fact in presenting its argument to this Court – namely, that there were two (2) specific powers of attorney, duly-recorded and properly attested, which the Debtors granted to permit Casimir S. Rejent, III the power to "… as my true and lawful attorney in fact… in my name, place and stead, to refinance the terms of the mortgage on the property designated… and to execute appropriate promissory notes, deeds to secure debt… and any and all other instruments in furtherance of the foregoing and to secure a mortgage loan(s) to SUNSHINE MORTGAGE CORPORATION."[18]

In addition to the recorded powers of attorney putting the Trustee on constructive and/or inquiry notice of the Sunshine Security Deed, as discussed elsewhere herein, these powers of attorney wholly eviscerate Trustee's unsubstantiated argument that the Debtors, in signing the Sunshine Security Deed by way of their attorney-in-fact "in [their] name, place, and stead" somehow nonetheless constitutes a 'false affidavit' as to the Sunshine Security Deed's Waiver of Borrower's Rights, given its execution by the Debtors' attorney-in-fact, who was expressly authorized of-record to execute the Sunshine Security Deed in the Debtors' "name, place, and stead".  As shown in Brown, supra, the acts of the attorney in fact acting within the terms of the

---

[18] There are two separate sets of power of attorney documents recorded – one set recorded before the RBC Security Deed and one set recorded before the Sunshine Security Deed.  These "Specific Power of Attorney" forms are recorded respectively on August 22, 2006 at Deed Book 43293, Page 127-128 and on September 22, 2006 at Deed Book 43515, Page 86-87, Fulton County Georgia records.  This Court may take judicial notice of these powers of attorney within the real estate records of Fulton County, Georgia, pursuant to Fed. R. Evid. 201, as they are recorded legal instruments, maintained by Fulton County Clerk of Superior Court and qualify under the rule as they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

attorney in fact's agency ARE THE ACTS OF THE PRINCIPAL. Therefore the execution by the attorney-in-fact of the Waiver of Borrower's Rights, was an act of the borrowers.

Accordingly, given the properly and duly record powers of attorney by the Debtors, which explicitly make reference to a security deed in favor of Sunshine Mortgage Corporation, and which further immediately precede the recording of the Sunshine Security Deed in the real property records of Fulton County, Georgia, the Trustee as a matter of law had actual notice of the Sunshine Security Deed.

As shown above, Wells is unequivocally entitled to summary judgment and the Trustee is not.

## **CONCLUSION**

Though the Trustee has proffered a self-serving affidavit in support of its back-room deal with PNC on the RBC Security Deed, Wells has presented factual evidence to prove that PNC is subordinate to Wells, in addition to PNC and Trustee's own admissions as to the same.

Based upon this clear documentation and reasons set forth above, Wells Fargo respectfully requests that this Court grants its Motion for Summary Judgment and deny Trustee's motion.

Respectfully submitted, this 11th day of October, 2019.

/s/ Monica K. Gilroy
MONICA K. GILROY
Georgia Bar No. 427520
MATTHEW F. TOTTEN
Georgia Bar 798589
Attorneys for Wells Fargo Bank, N.A.

THE GILROY FIRM
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
(678) 280-1922 (Telephone);
(678) 280-1923 (Facsimile)
Monica.Gilroy@gilroyfirm.com
Matthew.totten@gilroyfirm.com

# CERTIFICATE OF SERVICE

I hereby certify that I have this 11th day of October, 2019, filed the within and foregoing by CM/ECF, which will serve notice on all necessary parties and/or by depositing a copy of the same in the US Mail with adequate postage affixed as follows:

>Neil C. Gordon
>Michael J. Bargar
>Arnall Golden Gregory LLP
>171 17th Street, NW, Suite 2100
>Atlanta, GA 30363
>
>neil.gordon@agg.com
>michael.bargar@agg.com
>
>John D. Schlotter
>McCalla Raymer Leibert Pierce, LLC
>1544 Old Alabama Road
>Roswell, GA  30076

>/s/ Monica K. Gilroy
>MONICA K. GILROY
>Georgia Bar No. 427520
>MATTHEW F. TOTTEN
>Georgia Bar 798589
>Attorneys for Wells Fargo Bank, N.A.

THE GILROY FIRM
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
(678) 280-1922 (Telephone);
(678) 280-1923 (Facsimile)
Monica.Gilroy@gilroyfirm.com
Matthew.totten@gilroyfirm.com

.